Quarles & Brady LLP
Firm State Bar No. 00443100
Renaissance One
Two North Central Avenue
Phoenix, Arizona 85004-2391
TELEPHONE 602.229.5200

Nicole M. Goodwin (024593)
Nicole.goodwin@quarles.com

David H. Bernstein
(dhbernstein@debevoise.com)
Camille Calman (ccalman@debevoise.com)
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
(212) 909-6000

*Admitted Pro Hac Vice*

*Attorneys for Defendant Animal Health Division of Bayer HealthCare LLC*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Farnam Companies, Inc. d/b/a Central Life Sciences,<br><br>Plaintiff.<br><br>vs.<br><br>Animal Health Division of Bayer HealthCare LLC,<br><br>Defendant. | NO. CV-02853-HRH<br><br>**DEFENDANT'S MOTION TO DISMISS OR, ALTERNATIVELY, TO STAY**<br><br>**(Oral Argument Requested)** |

Defendant Animal Health Division of Bayer HealthCare LLC ("Bayer") hereby moves for an Order dismissing Plaintiff's complaint in its entirety for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1), and for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). In the alternative,

Bayer moves, pursuant to the Court's inherent authority to manage its docket in order to promote efficiency and fairness, for a stay to permit the conclusion of a parallel proceeding involving the same parties and the same issue. This Motion is supported by the following Memorandum of Points and Authorities as well as the Declaration of Cynthia Hughes-Coons, submitted herewith.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

This is a false advertising dispute between two competitors in the market for flea and tick control products for pets. The dispute began when Bayer challenged advertisements by Plaintiff Farnam Pet Products ("Farnam") in the advertising industry's forum for self-regulation of advertising disputes, the National Advertising Division of the Council of Better Business Bureaus (the "NAD"). Farnam responded by filing this declaratory judgment lawsuit. However, for the reasons discussed below, Farnam's claims should be dismissed or, in the alternative, stayed to permit the NAD to complete its self-regulatory review.

In its complaint, Farnam seeks a declaratory judgment that its advertisements do not violate regulations promulgated under the Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA") and the Federal Trade Commission ("FTC") Act. Because those statutes and regulations do not grant any private right of action, Farnam can have no reasonable anticipation that Bayer will sue under them, and thus there is no case or controversy between the parties related to those claims. Moreover, in the absence of any private right of action, this court lacks subject matter jurisdiction to adjudicate Farnam's request for declaratory relief. The counts of Farnam's complaint relating to these regulations thus state no claim on which this Court can grant relief; any potential harm

Farnam faces is from regulators, not Bayer, and any judgment granted in a case between private parties would not relieve Farnam from that threat.

Farnam also asks this Court to declare its advertisements truthful under the Lanham Act. However, Farnam's own complaint alleges that Bayer lacks standing under the Lanham Act. Taking Farnam's complaint on its own terms, if Bayer lacks standing, then there is no basis for a declaratory judgment, and Farnam's Complaint is facially inadequate to make out a claim for declaratory relief.

Furthermore, Farnam can have no reasonable anticipation of Lanham Act litigation because Bayer has already demonstrated that it would not sue Farnam; rather, Bayer has sought to resolve this controversy solely at the NAD. Indeed, in the accompanying Declaration of Cynthia Hughes-Coons, Bayer further affirms that its only intention was and remains to seek resolution of this advertising dispute at the NAD, not in federal court, and that Bayer will agree to abide by whatever the NAD decides. The Court should thus dismiss all three counts of Farnam's complaint.

Alternatively, should the Court decline to dismiss any part of Farnam's complaint, Bayer asks that the Court stay further proceedings in this litigation to allow the NAD proceeding to reach conclusion. Such a stay would allow the NAD to issue an informed, non-binding opinion on issues that are relevant to this case, such as whether Farnam's ads constitute puffery or opinion. The NAD's decision might end this controversy altogether or pave the way to a settlement, conserving judicial resources. Under the normal rules of the NAD, it should take approximately three months for the NAD to complete its work and issue its decision in this case; indeed, if the Court issues an order requesting that the NAD complete its review, the NAD can continue its work on a parallel track while the Court considers Bayer's motion to dismiss.

## II. FACTUAL BACKGROUND

The products at issue in this case are topical solutions that control pests on pets. Bayer's K9 Advantix products control fleas, ticks, mosquitoes, lice and biting flies on dogs, whereas its Advantage products control fleas on cats and dogs, and lice on dogs. Farnam's competing Bio Spot products similarly control fleas and ticks on cats and dogs. Advantage and K9 Advantix lines are the second most popular pest control products in the U.S. pet market, after Merial's Frontline products.

In an effort to ensure that its products are competing fairly in this category, Bayer has brought NAD challenges in recent years against a number of competitors, challenging advertisements that were making false and unsubstantiated claims. *See* attached Hughes-Coons Declaration ¶¶ 3, 8-10, 12. Competitors have also challenged some advertising by Bayer and other competitors in NAD proceedings. *Id.* ¶¶ 11, 13. NAD has issued more than half a dozen decisions in the last three years alone – involving Bayer, Merial, Summit VetPharm LLC (over its Vectra 3D and Vectra products), and Elanco Animal Health Division (over its Comfortis products) – which have led to an increased awareness in the industry of the need to substantiate advertising claims properly. *Id.* Exs. H-O.

For many years, Bayer distributed its Advantage and K9 Advantix pest control products only through veterinarians (though, inevitably, some portion of the products was diverted to retail channels without Bayer's consent). In March 2010, Bayer began to sell its products over the counter through pet specialty stores and pet-care websites, as well as through veterinarians. This successful strategic change now allows Bayer's products to reach consumers who prefer to buy these products without a doctor visit, while continuing to be widely recommended and sold by vets. Bayer's products remain the second most popular in the field. *Id.* ¶ 2.

Bayer's new sales approach brought its products into more direct competition with Farnam's Bio Spot products, which long have been sold through retail channels. Farnam, however, was engaged in a campaign of unfairly comparing its products to Bayer's. For example, Farnam claimed in print and website advertising: (1) that Bio Spot is "as effective as popular vet brands" and as effective as what consumers "used to get at [their] vet," *e.g.,* Complaint Exs. D, F, an intended comparison to Bayer's products, *see* Complaint Ex. C at 6-7 & internal Ex. I; (2) that Bio Spot offers the "best solution" and is "the best flea and tick control available," Complaint Exs. D, E; and (3) that Bio Spot is "the choice of professionals," Complaint Ex. F. Because Bayer believes those claims are false and unsubstantiated, it wrote to Farnam in August 2010 to express its concerns with Farnam's advertising. Complaint Ex. A.

Farnam replied by letter rejecting Bayer's claims. However, in its reply, Farnam did not cite any studies to substantiate its parity and superiority claims. Instead, it replied by asserting that its claims are non-actionable puffery. Complaint Ex. B. Because Bayer does not believe Farnam's products are comparable – let alone superior – to Bayer's products, *see generally* Complaint Ex. C, Bayer sought review of Farnam's advertising by the NAD, the premier arbiter of advertising disputes in the United States.

The NAD was created in 1971 by the Council of Better Business Bureaus and the advertising industry's leading trade associations. Its mission is to "review national advertising for truthfulness and accuracy and foster public confidence in the credibility of advertising." *See* http://www.nadreview.org (a copy of which is submitted herewith as Exhibit A to the Hughes-Coons Declaration). Through its self-regulatory advertisement review process, it aims to provide the most effective, efficient and least expensive forum in the United States for settling advertising disputes. *See* http://www.nadreview.org/How

NADWorks.asp (a copy of which is submitted herewith as Exhibit C to the Hughes-Coons Declaration).[1]

Courts frequently acknowledge the NAD's unique expertise in advertising disputes and the high rate of advertiser compliance with its decisions. *See, e.g., Sanderson Farms, Inc. v. Tyson Foods, Inc.*, 549 F. Supp. 2d 708, 718 n.7 (2008) (voluntary compliance with NAD decisions "appears almost universal"); *Russian Standard Vodka (USA), Inc. v. Allied Domecq Spirits & Wine USA Inc.*, 523 F. Supp. 2d 376, 384 (S.D.N.Y. 2007) (NAD is a "a highly reputable institution" with an expertise in resolving advertising disputes); *Millennium Imp. Co. v. Sidney Frank Importing Co.*, Civ. No. 03-5141, 2004 U.S. Dist. LEXIS 11871, at *6 (D. Minn. June 11, 2004); *AMF, Inc. v. Brunswick Corp.*, 621 F. Supp. 456, 462 (E.D.N.Y. 1985); *see also Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 480 (D.N.J. 2009) (ordering that future advertising that ran afoul of court's opinion be submitted to a neutral panel "such as the National Advertising Division"). Similarly, the FTC, the nation's regulator of advertising, regularly praises the NAD. For example, a 1999 FTC report on self-regulation in the alcohol industry described the NAD as an "especially effective model of self regulation . . . [that] has handled over 3,500 cases since 1971," and recognized that "in virtually all cases advertising found to be misleading has been discontinued or modified voluntarily." http://www.ftc.gov/reports/alcohol/alcoholreport.htm (a copy of which is submitted

[1] The NAD's procedure is straightforward: The challenger and the advertiser each make one or two written submissions, the NAD holds a meeting with each party to discuss the advertising and the challenger's concerns, and the NAD then issues its decision, typically all within 60 business days. Although compliance with NAD recommendations is voluntary, if a party does not agree to modify its advertising in response to an NAD recommendation, the NAD will refer the matter to the Federal Trade Commission or another appropriate governmental authority. *See* NAD Procedures ¶ 2.1F (a copy of which is submitted herewith as Exhibit B to the Hughes-Coons Declaration). Because of the respect with which NAD decisions are received by the advertising industry, the NAD enjoys a very high compliance rate, in excess of 95 percent. *See* http://www.bbb.org/us/cbbb-staff/andrea-levine/ (attached as Exhibit D to the Hughes-Coons Declaration); Hughes-Coons Declaration ¶¶ 4-5.

herewith as Exhibit E to the Hughes-Coons Declaration). Former FTC Chairman Robert Pitofsky described the NAD as "the best example of self-regulation that I am aware of in American industry." Deborah Platt Majoras, Chairman, Fed. Trade Comm'n, *Self Regulatory Organizations and the FTC*, at 10 (Apr. 11, 2005) (a copy of which is submitted herewith as Exhibit F to the Hughes-Coons Declaration). Former FTC Commissioner Sheila Anthony has called the NAD "a model of effective, private, self-regulatory programs." http://www.ftc.gov/bcp/workshops/weightloss/transcripts/transcript-113-117.pdf (a copy of which is submitted herewith as Exhibit G to the Hughes-Coons Declaration). The NAD also has a great deal of recent, specific experience with the methodologies used for the testing of flea and tick control products. Hughes-Coons Declaration ¶ 3, 7-13; Exs. H-O.

Farnam had ample time to respond to Bayer's NAD challenge and could have requested an extension under NAD procedures. Instead, on November 30, 2010, the day before its response was due under NAD rules, it filed this lawsuit.

## III. LEGAL ARGUMENT

### A. Farnam's Request for a Declaratory Judgment Under 40 C.F.R. § 156.10(a)(5)(ii) and (iv) Should Be Dismissed Because This Court Lacks Subject Matter Jurisdiction and Because Plaintiff Fails to State a Claim.

Farnam is not entitled to a declaratory judgment that its advertising does not violate the Environmental Protection Agency's ("EPA") FIFRA regulations because there is no private right of action to enforce FIFRA, and, therefore Bayer could not bring a FIFRA claim against Farnam. For that reason, not only is there no case or controversy that could support declaratory judgment jurisdiction, but also, Farnam's FIFRA-related count should be dismissed for failure to state a claim.

The Declaratory Judgment Act states: "In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. For jurisdiction to lie, the action must present a "real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979). If no justiciable case or controversy exists, a court must dismiss the action for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3); *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121 (9th Cir. 2010).

An "actual controversy" exists under the Declaratory Judgment Act only if "the facts alleged, under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co. et al.*, 312 U.S. 270, 273 (1941)). With respect to the required "substantial controversy," the plaintiff must demonstrate that it has a judicially remediable right under a substantive federal statute other than the Declaratory Judgments Act, which is not an independent source of federal jurisdiction. *Schilling v. Rogers*, 363 U.S. 666, 677 (1960).

The regulations on which Farnam seeks a declaratory judgment in Count Two of its Complaint, 40 C.F.R. § 156.10(a)(5)(ii) and (iv) (the "EPA labeling regulations"), were promulgated by the EPA under FIFRA, 7 U.S.C. §§ 136-136y. It is settled law in the Ninth Circuit that there is no private right of action under FIFRA. *Fiedler v. Clark*, 714 F.2d 77, 79 (9th Cir. 1983); *Rodriguez v. American Cyanamid Co.*, 858 F. Supp. 127, 130-31 (D. Ariz. 1994). It is equally clear that EPA rules promulgated under FIFRA, like

the EPA labeling regulations, do not provide any implicit private right of action. *Opera Plaza Residential Parcel Homeowners Assoc. v. Hoang*, 376 F.3d 831, 837 (9th Cir. 2004) (only federal statutes, not rules pursuant to them, can create a private cause of action; therefore, "a regulation promulgated by an administrative agency . . . cannot by itself, in the absence of congressional authorization, confer subject matter jurisdiction on federal courts").

Because there is no private right of action to enforce FIFRA or the EPA labeling regulations, Bayer would have no standing to challenge Farnam's advertising under these regulations. Farnam concedes as much. Complaint ¶ 51 ("Bayer has no standing to sue Farnam, under 40 C.F.R. § 156.10(a)(5)(ii) and (iv) . . . ."). Given that Bayer could not sue Farnam for violating these rules, there is no case or controversy between Bayer and Farnam regarding Farnam's compliance. Rather, any potential dispute would be between Farnam and the EPA. That, however, is not an issue fairly resolved in this private litigation between Farnam and Bayer. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (no standing, and thus no case or controversy, where plaintiff's alleged injury is traceable not to defendant's conduct but to that of a third party not before the court).

This Court should thus dismiss Count Two of the Complaint for lack of subject matter jurisdiction. In addition, because there is no set of facts under which Farnam could be entitled to a declaratory judgment against Bayer under FIFRA or its regulations, Count Two must be dismissed for failure to state a claim.

### B. **Farnam's Request for a Declaratory Judgment Under 16 C.F.R. § 255 et seq. Should Be Dismissed Because This Court Lacks Subject Matter Jurisdiction and Because Plaintiff Fails to State a Claim.**

For similar reasons, Count Three of Farnam's Complaint also should be dismissed. The regulations under which Farnam seeks declaratory judgment in this count, 16 C.F.R. § 255 et seq., are guidelines promulgated by the FTC under the FTC Act, 15 U.S.C.

§§ 45, 52 and 54, and include no private right of action. Indeed, as the FTC has noted, these regulations "are administrative interpretations of the law intended to help advertisers comply with the Federal Trade Commission Act; they are not binding law themselves." FTC, "FTC Publishes Final Guides Governing Endorsements, Testimonials," Oct. 5, 2009 (submitted herewith as Exhibit Q to the Hughes-Coons Declaration). The FTC Act itself also does not provide a private right of action. *Carlson v. Coca-Cola Co.*, 483 F.2d 279, 280-81 (9th Cir. 1973); *Holloway v. Bristol-Myers Corp.*, 485 F.2d 986, 988-89 (D.C. Cir. 1973).

For these reasons, as with the FIFRA regulations, there is no case or controversy between Bayer and Farnam regarding whether Farnam has violated FTC regulations. Only FTC could bring such a claim; any declaration issued by the Court in this case would not clarify or settle legal relations between Bayer and Farnam or terminate and afford relief from any uncertainty that Farnam might experience about its position under FTC guidelines. *See Bilbrey by Bilbrey v. Brown*, 738 F.2d 1462, 1470 (9th Cir. 1984) (declaratory relief is appropriate "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding"). There is no case or controversy, and Farnam cannot state a claim, under regulations that are not binding law or under a statute with no private right of action.

### C. **Plaintiff's Lanham Act Claim Should Be Dismissed Because There Is No Lanham Act Case or Controversy.**

The Lanham Act, unlike FIFRA and the FTC Act, does provide a private right of action. 15 U.S.C. § 1125(a)(1)(B). Nonetheless, Farnam's complaint, on its face, fails to state a claim or to allege a Lanham Act case or controversy because it avers that Bayer has no standing to bring suit under the Lanham Act. Complaint ¶ 45. While Bayer would

vigorously contest that issue if this case were to go forward, on a motion to dismiss, the Court must accept the plaintiff's allegations as true as long as they contain sufficient factual content to make out a plausible claim to relief. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Farnam seeks a declaratory judgment that Bayer lacks standing, and supports its allegation with a factual claim that the Bio Spot ads are not directed at Bayer's products. Complaint ¶ 42. Bayer disagrees, but for the purposes of this motion, the complaint pleads that Bayer lacks standing. If that is the case, the complaint fails to state a claim (because standing is a necessary element of any Lanham Act case) or allege a justiciable case or controversy under the Lanham Act.

Furthermore, if Farnam genuinely believes that Bayer lacks standing to bring suit under the Lanham Act, then Bayer's August 10, 2010 letter, which alleged that Farnam's ads violated the Lanham Act, would have created no reasonable apprehension of liability, without which there is no case or controversy. *See Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1157-58 (9th Cir. 2007); *Chesebrough-Pond's, Inc. v. Faberge, Inc.*, 666 F.2d 393, 396 (9th Cir. 1982).

Even if this Court were to find that Farnam's complaint adequately alleges Bayer's standing to sue under the Lanham Act, Farnam has no reasonable apprehension that Bayer will do so. As Farnam acknowledges, Bayer has chosen an alternative forum to resolve this dispute. Complaint ¶¶ 26-33. Bayer cannot bring actions at the NAD and this Court simultaneously because NAD will not accept a case if the matter is the subject of a court litigation. Complaint ¶ 38. Any apprehension by Farnam of Lanham Act litigation is thus speculative at best, and cannot give rise to an actual case or controversy under the Lanham Act. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 712 (7th Cir. 2002) ("The declaratory judgment plaintiff must be able to show that the feared lawsuit from the other party is immediate and real, rather than merely speculative.").

In any event, to remove all doubt, Bayer specifically disavows in a sworn statement any intent to challenge Farnam's current advertisements under the Lanham Act. As Ms. Hughes-Coons explains:

> Bayer filed its action at the NAD because it had no intention of suing Farnam in court. Rather, as Bayer made clear with the filing of the NAD challenge, Bayer's only intention was to seek a resolution of this advertising dispute at the NAD (as Bayer and its competitors have done with other advertising-related challenges in recent years). I can affirm that Bayer continues to have no intention of suing Farnam over the Bio Spot advertising at issue in this case. However NAD rules, Bayer will accept NAD's decision in this case.

Hughes-Coons Declaration ¶ 14.

### D. **<u>This Court Should Stay the Case to Allow the NAD to Complete Its Review of Farnam's Advertising.</u>**

In lieu of dismissing the complaint in whole or in part, the Court should issue a stay to allow the NAD to complete its review of Farnam's advertising. NAD has already indicated that it would be prepared to reopen its proceedings should the court stay or dismiss this case, or otherwise remand the matter back to the NAD. Hughes-Coons Declaration Ex. P. A decision by the NAD (which could be expected in about three months) would promote efficient use of the Court's resources since it may dispose of the case completely, facilitate settlement, or help the Court resolve some of the issues raised in the complaint. *Russian Standard*, 523 F. Supp. 2d at 384-85 (staying declaratory judgment action to permit NAD to complete its review of the advertising at issue).

A district court possesses the inherent power to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (*citing Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). This includes the power to stay a case pending related

proceedings, regardless of "whether the separate proceedings are judicial, administrative, or arbitral in character." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979). The ability to exercise this discretion in favor of a stay "does not require that the issues in such proceedings are necessarily controlling of the action before the court." *Id.*

The Ninth Circuit has identified five factors a court should consider in deciding whether to issue a stay:

> (1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation.

*Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324-25 (9th Cir. 1995). Here, each of the five factors weighs in favor of granting the stay requested by Bayer.

1. Plaintiff's Interests: This factor favors a stay because "the NAD's decision may be illuminating for further resolution in this case, and thus beneficial to plaintiffs." *Russian Standard*, 523 F. Supp. 2d at 384. An NAD ruling would necessarily address the issues Farnam raised in its complaint, including whether its claims constitute non-actionable puffery or statements of opinion. If the NAD finds in Farnam's favor, the stay clearly would have been in Farnam's interest (especially since Bayer has agreed to accept NAD's decision, Hughes-Coons Declaration ¶ 14). Even if the NAD rules against Farnam, that may ultimately be in plaintiff's interest if it facilitates settlement or a more efficient resolution of this dispute; in any event, the NAD decision would not be binding on this Court, and the Ninth Circuit does not consider an adverse decision on the merits to be the kind of prejudice that weighs against a stay. *CMAX*, 300 F.2d at 269. Thus, if this

action is stayed, Farnam would lose no rights and might permanently prevail, in which case it would avoid the need to pursue this declaratory judgment case.

2. <u>Burden on Defendant</u>: Denying a stay would unduly burden Bayer because litigation before the Court could take two years or more to resolve, during which Farnam's false and misleading advertisements would continue to harm Bayer's sales. Bayer therefore has a strong interest in obtaining a timely decision from the NAD. Under its procedures, the NAD issues a written decision within sixty business days after the commencement of a challenge. Hughes-Coons Declaration Ex. C. Denying a stay would impose a significant burden on Bayer by depriving it of a quick decision from a reputable, industry-recognized body.

In addition, Bayer has invested time and money since August of 2010 in preparing and initiating the NAD challenge. In *Russian Standard*, the court agreed that the potential loss of costs a party has already sunk in an NAD challenge is a harm that weighs in favor of a stay. 523 F. Supp. 2d at 384.

3. <u>Convenience of the Courts</u>: The third factor weighs heavily in favor of granting a stay for two reasons. <u>First</u>, an NAD decision could improve the prospect of settlement. In rendering its decision, the NAD will bring to bear expertise from handling well over 3,700 advertising cases to date (including a half dozen cases involving flea and tick control products in the last three years alone). *Millennium Imp. Co.*, 2004 U.S. Dist. LEXIS 11871, at *6. Thus, an NAD decision in this case will give the parties a reliable indication of how key issues identified in the complaint would likely turn out should the same issues be brought back to court. *See, e.g.*, *AMF, Inc. v. Brunswick Corp.*, 621 F. Supp. at 458, 461 (finding it "highly likely" that an NAD decision would help resolve differences between the parties, even though the decision was non-binding); *Russian*

*Standard*, 523 F. Supp. 2d at 384 (noting that cases like *AMF* highlight "the NAD's effectiveness in resolving disputes").

Second, even if the NAD decision does not lead to settlement and this case returns to the Court, the NAD's objective, expert findings on key issues would assist the Court in reaching its decision on the merits. *See, e.g.*, *Russian Standard*, 523 F. Supp. 2d at 384. The Ninth Circuit has similarly agreed that, even where a court would not be bound or controlled by a concurrent proceeding's conclusion or findings, a stay to allow that proceeding to finish could clarify key issues for the Court and inform any eventual judicial determination. *Leyva*, 593 F.2d at 863; *see also CMAX*, 300 F.2d at 269 (noting that the concurrent proceeding "will provide a means of developing comprehensive evidence bearing upon . . . questions which are likely to arise in the district court case").

For example, drawing on its experience with consumer perceptions, the NAD would indicate its views on whether Farnam's claims constitute non-actionable puffery. Should the case return to the Court after the NAD decision, the Court would have the benefit of these relevant findings, along with the NAD's detailed explanation for why it reached the conclusions that it did.

4. and 5. Interests of Non-Parties and the Public: Both non-parties and the public at large would benefit from an NAD decision on the Bio Spot advertising because such decisions can provide guidance to entire industries. Hughes-Coons Declaration ¶ 16. As the *Russian Standard* court explained, an NAD decision may help "set advertising standards for the industry on an important issue," and "the public and industry would benefit greatly from hearing the NAD's opinion." 523 F. Supp. 2d at 385. Other competitors in the animal health products industry would also benefit from the NAD's opinion on when products may appropriately claim to be at parity with, or superior to, competitors' products, and what standard governs claims that a product keeps pets "free"

of pests. Veterinarians and pet owners would benefit from a clearer understanding of what such claims really mean when considering which animal health products to recommend or use.

For the reasons above, the five factors outlined in *Keating* all weigh in favor of a stay. Accordingly, this court should exercise its discretion to stay the present case to allow the NAD to complete its review of Farnam's advertising. If the Court prefers, NAD's review could even be conducted contemporaneously with the Court's consideration of Bayer's motion to dismiss, to avoid any delay in reaching the merits of this case.

## IV. <u>CONCLUSION</u>

Bayer respectfully requests that this Court dismiss Farnam's complaint under Rules 12(b)(1) and 12(b)(6) of the Rules of Civil Procedure. In the alternative, Bayer requests a stay of this case pending resolution of NAD review of Farnam's advertising.

QUARLES & BRADY LLP
Renaissance One
Two North Central Avenue
Phoenix, AZ 85004-2391

By /s/ Nicole M. Goodwin
Nicole M. Goodwin

David H. Bernstein
(dhbernstein@debevoise.com)
Camille Calman (ccalman@debevoise.com)
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
(212) 909-6000
*Admitted Pro Hac Vice*

*Attorneys for Defendant Animal Health Division of Bayer HealthCare, LLC*

# CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of January, 2011, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants.

Robert J. Itri
Donna Howard Catalfio
Gallagher & Kennedy PA
2575 E Camelback Rd, Ste 1100
Phoenix, AZ 85016-9225
602-530-8208
Fax: 602-530-8500
Email: dhc@gknet.com
Email: rji@gknet.com

/s/ Nicole M. Goodwin