Robert J. Itri (Bar No. 10938)
Janey Henze (Bar No. 22496)
GALLAGHER & KENNEDY, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
Telephone: (602) 530-8000
Facsimile: (602) 530-8500
Email: rji@gknet.com
Email: janey.henze@gknet.com

Attorneys for Plaintiff Farnam Companies, Inc.,
  d/b/a Central Life Sciences

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Farnam Companies, Inc., d/b/a Central Life Sciences,<br><br>Plaintiff,<br><br>v.<br><br>Animal Health Division of Bayer Healthcare, LLC,<br><br>Defendant. | 2:10-CV-02583-HRH<br><br>**PLAINTIFF'S OPPOSITION IN RESPONSE TO DEFENDANT'S MOTION TO DISMISS OR, ALTERNATIVELY, STAY,**<br><br>*and, in the alternative,*<br><br>**PLAINTIFF'S MOTION TO AMEND THE COMPLAINT**<br><br>**(Oral Argument Requested)** |

Plaintiff Farnam Companies, Inc., d/b/a Central Life Sciences (hereinafter "Farnam") hereby responds to Defendant Animal Health Division of Bayer Healthcare, LLC's ("Bayer") Motion to Dismiss or Alternatively, to Stay. Farnam has properly stated a claim pursuant to the Federal Rules of Civil Procedure and this Court has subject matter jurisdiction over this matter. Accordingly, Bayer's Motion should be denied. This Motion is supported by the following Memorandum of Points and Authorities.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. PREFATORY STATEMENT

Bayer has claimed, and continues to claim, that Farnam's advertising of its Bio Spot® product is false, misleading and violative of various federal laws and regulations, including the Lanham Act. In furtherance of its false adverting claim, Bayer filed a complaint before the National Advertising Division of the Council of Better Business Bureaus (the "NAD")—an industry forum where there is no right to a jury trial, where traditional notions of due process and Rules of Evidence do not apply and in which equitable defenses such as laches, estoppel, acquiescence and the application of the statute of limitations are unavailable.[1] Rather than submit to the purview of such a forum, Farnam sought the aid and protections of this Court in filing its Declaratory Judgment Complaint. Bayer's efforts to dismiss this action and force Farnam to defend itself before the NAD is nothing more than an attempt by Bayer to deprive Farnam of defenses available to it and which are fatal to Bayer's claims.

A judiciable "case or controversy" exists before this Court. Bayer's Motion to Dismiss or, Alternatively, to Stay this case should be denied.

## II. BACKGROUND

### A. Bayer's False Advertising Claims.

Farnam is the manufacturer and distributer of Bio Spot® topical flea and tick control products for cats and dogs (hereinafter "Bio Spot"). Farnam sells its Bio Spot products exclusively over-the-counter and has always done so. Comp. ¶ 12. Until recently, Bayer sold its flea and tick control products called K9 Advantix® and

---

[1] Despite the private nature of the NAD forum, the NAD "has the ear" of the Federal Trade Commission (the "FTC") and regularly refers matters to the FTC for prosecution. *See* "The NAD Process" *infra* at p. 4.

Advantage® exclusively through veterinarians.  Comp. ¶ 13; *see also* Hughes-Coons Declaration in Support of Bayer's Motion to Dismiss or, Alternatively, to Stay ("Hughes-Coons Decl") at ¶ 2.  In or about early 2010, Bayer began selling the K9 Advantix® and Advantage® over-the-counter as well as through veterinarians.  Comp. ¶ 14; Hughes Coons Decl, ¶ 2.  As a result, Bayer began to compete directly with Farnam.  Comp. ¶ 14.

Shortly after Bayer decided to sell competing products over-the-counter, Bayer began to allege that Farnam's advertising for its Bio Spot product constituted false advertising.  Comp. ¶ 17.  By letter dated August 20, 2010 to Farnam, Bayer alleged that certain claims made in advertising for Farnam's Bio Spot products are misleading, convey false and unsubstantiated claims and are in violation of federal law.  *See* Comp. Ex. A.

Specifically, Bayer claimed that Farnam's advertising pieces made false, misleading and unlawful comparisons to Bayer's own flea and tick products and violated 40 C.F.R. § 156.10(a)(5)(ii) & (iv) and the Lanham Act.  *Id*.  Bayer also demanded that Farnam provide substantiation for these claims or immediately withdraw the advertising.  *Id.*

Farnam responded to Bayer by letter dated September 22, 2010.  Comp. Ex. B.  In that letter, Farnam notified Bayer that the product comparisons were based upon the products' respective EPA-approved label claims, and thus, were true.  *Id*.  Farnam also noted that use of the word "best" in its advertising is mere puffery or opinion, which is not actionable.  *Id*.  Accordingly, Farnam declined to withdraw its advertising.  Comp. ¶ 25; Comp. Ex. B.

Thereafter, on November 4, 2010, Bayer submitted a formal complaint against Farnam's advertising for Bio Spot to the NAD (hereinafter, the "NAD Complaint").  Comp. ¶ 26; Comp. Ex. C.  In response to Bayer's claims, and the filing of the NAD Complaint, Farnam filed this action seeking a declaratory judgment that its advertising

3

claims are truthful, lawful and adequately substantiated under the Lanham Act, 15 U.S.C. § 1125(a), and 40 C.F.R. § 156.10(a)(5)(ii) & (iv); that its advertisement complies with 16 C.F.R. § 255 *et seq.*; and that Bayer's claims are barred by the doctrine of laches, estoppel and/or acquiescence. *See* Comp. Counts One-Four.

### B. The NAD Process.

The NAD provides a non-binding, voluntary forum under which advertising disputes may be resolved. Comp. ¶ 38; Hughes-Coons Decl, ¶ 5; *see also,* NAD Policies and Procedures (titled "The Advertising Industry's Process of Voluntary Self Regulation") attached hereto as **Exhibit 1**("**EX. 1**"). In light of the voluntary nature of the process, the NAD recognizes that any party may prefer to resolve a dispute in a court of law and, therefore, provides that any complaint before the NAD that is "the subject of pending litigation" is not appropriate for NAD resolution and shall be administratively closed. *Id.* § 2.2(B)(i)(b). If, however, there is no pending litigation and a party elects not to participate in the "voluntary" process, the NAD will refer the matter to "appropriate federal or state law enforcement agency," including the FTC. Ex. 1, § 2.1(F)(iii); *see also* Hughes-Coons Decl, ¶ 6. The FTC takes refusals to participate in the NAD process seriously. Hughes-Coons Decl, ¶6; *see also*, **Exhibit 2** ("Ex. 2") attached hereto at page 2, keynote address by Commissioner Pamela Jones Harbour stating "The FTC takes refusals to participate in NAD … proceeding very seriously, and has brought numerous actions after referrals from these programs."

### III. DISCUSSION

### A. Bayer's Motion To Dismiss Count One (Lanham Act Claim) for Lack of Subject Matter Jurisdiction.

Bayer moves to dismiss the Complaint, arguing that the Court does not have subject matter jurisdiction because there is not an "actual controversy" as required under the Declaratory Judgment Act. However, an "actual controversy" does exist.

The Declaratory Judgment Act provides that "[i]n a case of *actual controversy* within its jurisdiction … any court of the United States … may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a), *emphasis added*. The "case of actual controversy, element of the Declaratory Judgment Act [refers] to the types of cases and controversies that are justiciable under Article 3." *Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227, 240, 57 S. Ct. 461, 461 (1937).

Declaratory relief is appropriate "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceeding." *Bilbrey By Bilbrey v. Brown*, 738 F.2d 1462, 1470 (9th Cir. 1984). "Basically the question in each case is whether the facts alleged, under all the circumstances, show there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal and Oil Co.* 312 U.S. 270, 273, 61 S. Ct. 510 (1941); *See also Medimmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 127, 127 S. Ct. 764, 772 (2007).

In *Medimmune, Inc. v. Genentech, Inc.,* the Court considered the requirements of the "actual controversy" element of the Declaratory Judgment Act. The Court held that Article III jurisdiction, and an actual controversy, exists where a threat of action by the government exists. *Id*. at 128-129. Specifically, the Court, in noting that a "threatened" harm from the government or a private right of action is sufficient to meet the requirements of Article III standing, stated: "where threatened action by government is concerned, we do not require plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat. …" *Id*. at 128-129. "The plaintiff's own action (or inaction) in failing to violate the law eliminates the imminent threat of prosecution, but

nonetheless does not eliminate Article III jurisdiction." *Id.* at 129.  Quoting then-Justice Rehnquist in the *Steffel v. Thompson* case, the Court reiterated "the declaratory judgment procedure is an alternative to pursuit of the arguably illegal activity." *Id.* at 129, *citing Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209 (1974).  The Court further stated that subject matter jurisdiction is also commonly found in cases where the threat is from a private right of action, as opposed to a government one.  *See Medimmune, Inc.* at 130.

In *Rhoades v. Avon Products,* 504 F.3d 1151 (9th Cir. 2007), the Ninth Circuit held that "an action for a declaratory judgment that a patent [or trademark] is invalid, or that the plaintiff is not infringing, [presents] a case or controversy if the plaintiff has *a real and reasonable apprehension* that he will be subject to liability if he continues to manufacture his product." *Id.* at 1157 *citing Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.,* 896 F.2d 1542, 1555-56 (9th Cir.1990) (*emphasis added, internal quotation marks, alterations, and citations omitted*).  Here, Farnam had, and has, a real and reasonable apprehension that a lawsuit will ensue either by Bayer or a government agency.

In its Motion to Dismiss, Bayer asserts that the "real and reasonable apprehension" requirement is missing from this case because (1) Farnam's Complaint alleges that Bayer lacks standing, and (2) as stated in the Hughes Coons declaration, Bayer has "no intention of suing Farnam…."  Such assertion is without merit.

First, the Complaint states "Farnam seeks a declaration that Farnam's advertising claims are not actionable, or that Bayer has no standing to sue Farnam, under the Lanham Act because the claims made in Exhibits D-F are truthful, adequately substantiated, and lawful under the Lanham Act; and that the advertising claims set forth in Exhibits D-F constitute mere puffery or statements of opinion, and thus, are not actionable under the Lanham Act."  Comp. at ¶ 45.  Bayer's interpretation of this statement to mean that Bayer lacks "standing" as defined in Article III cases is unwarranted given the context in which

6

the statement is made. Farnam is simply stating that Farnam's advertising claims are not false and, therefore, Bayer has no claim under the Lanham Act.

False advertising, which is the essence of Bayer's dispute with Farnam, is actionable under the Lanham Act, *see* 15 U.S.C. § 1125(a), and Farnam had, and has, a reasonable apprehension that Bayer intends to litigate this issue. In Bayer's August 20, 2010 letter, Bayer states that Farnam's advertising is "false, misleading, and contains nonspecific statements that cannot be validated and therefore violate 40 C.F.R. 15610 (a)(5)(ii)(v*) and the Lanham Act." See* Comp. Ex. A, *emphasis added*. Farnam's Declaratory Judgment action was filed in response to those allegations. Moreover, Bayer has shown a clear intent to pursue its claim of false advertising by filing the NAD Complaint, and consequently a complaint with the FTC or through the NAD. Accordingly, Bayer's arguments that there is no "case or controversy" between the parties flies in the face of reason.

Furthermore, the statement contained in the Hughes-Coons declaration[2] concerning Bayer's intent not to sue does not wrest jurisdiction from this Court. As an initial matter, Bayer has offered no evidence to demonstrate that Ms. Hughes-Coons—an assistant general counsel—has any authority or ability to bind Bayer through her statements. Additionally, the statement contained in her declaration is ambiguous and indefinite. In the declaration, Ms. Hughes-Coons states that Bayer has "no intention of suing Farnam over the Bio Spot advertising at issue in this case." *See* Hughes-Coons Decl, ¶ 14. However, a statement that a party "does not intend to sue," is not sufficient to

---

[2] The Hughes-Coons declaration, in large part, lacks foundation, is not premised on personal knowledge and is comprised of inadmissible hearsay. Moreover, although Bayer's presentation of the declaration in support of its motion technically requires that Bayer's motion be treated as one for summary judgment under Rule 56, *see* Fed. R. Civ. P. 12(d), the declaration does not contradict any factual allegations raised by Farnam in its Complaint. Accordingly, Farnam need not submit any controverting materials.

dispose of a case or controversy.  *See SanDisk Corp. v. STMicroelectronics, Inc.* 480 F.3d 1372, 1383 (Fed. Cir. 2007) (holding that statement that [party] does not intend to sue does not moot the actual controversy created by its acts).  Further, the declaration does not address and leaves open the possibility that Bayer will sue Farnam for future use of the challenged advertisements.  In fact, Farnam's real and reasonable apprehension concerning just such an eventuality is borne out by Bayer's NAD Complaint, which asks that "the NAD recommend that Farnam cease its false claims and not make any comparative claims against competing products <u>in the future</u> absent appropriate substantiation."  *See* Comp. Ex. 3 at page 2, *emphasis added.*

*Russian Standard Vodka USA, Inc. v. Allied Domecq Spirits and Wine USA, Inc.,* 23 F. Supp. 2nd 367 (S.D.N.Y. 2007), a case involving an NAD complaint, is instructive.  In *Russian Standard Vodka*, the defendant offered a declaration stating that it would not pursue legal action against plaintiff for its past statements regarding authenticity.  *See Russian Standard*, 523 F.Supp.2nd 376 at 380.  Although the court found that the statement was adequate to dispose of a case or controversy with respect to past statements, it made clear that a case or controversy still existed as to future statements.  *Id.*  Specifically, the court stated:

> "[T]he threat of harm because of future statements that plaintiffs may make regarding Stoli's vodka is of sufficient immediacy to comply with the requirements articulated in *Medimmune*. … As is clear from the *Medimmune* decision, future conduct may be sufficiently imminent to comprise an actual controversy."

*Id*. at 383, *quotations omitted*.

The court went on to note that "both parties conduct indicate that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of declaratory judgment regarding any future statements to plaintiffs will make regarding Stoli's authenticity." *Id., internal*

*quotations omitted*. This finding was made despite the fact that defendant provided the court with a much more definite statement than the one provided here. In this case, rather than stating Bayer "will not pursue legal action," it merely states that Bayer has "no intention of" suing Farnam. It also limits the scope of its intentions not to sue to the Bio Spot advertising "at issue in this case." It does not address whether Bayer would file a lawsuit as to future comparative statements by Farnam. Accordingly, the statement in the Hughes-Coon declaration concerning Bayer's "intent not to sue" is insufficient to dispose of the existing case or controversy.

Furthermore, any attempt by Bayer to eliminate the "case or controversy element" through the filing of a supplemental declaration will be to no avail due to the threat of an FTC referral by the NAD. As noted above, Article III jurisdiction subsists where a threat of action by the government exists. *See Medimmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 127 S. Ct. 764 (2007).

In this case, an immediate, real and substantial controversy between Farnam and Bayer exists. They have adverse legal interests, and a Declaratory Judgment will afford relief from the uncertainty, insecurity and controversy arising from Bayer's false advertising claims. Although it is obvious that the NAD is the preferred forum for Bayer, Farnam is confident the District Court for the District of Arizona is well qualified to handle the dispute at hand. Bayer's Motion to Dismiss Count One should be denied.

**B. Bayer's Motion to Dismiss Counts Two and Three for lack of Subject Matter Jurisdiction and Failure to State a Claim.**

Bayer argues that Farnam's request for Declaratory Judgment under 40 C.F.R.§156.10(a)5(ii) and (iv) and 16 C.F.R. §255 should be dismissed for lack of subject matter jurisdiction and failure to state a claim. Bayer relies on the fact that private rights of action are not available under FIRFA and the FTC Act.

While Farnam concedes that private rights of action are not available under FIRFA

and the FTC Act, it maintains that the Court has jurisdiction over these counts under the Lanham Act. Plaintiff's Complaint seeking Declaratory Judgment mirrors the allegations made in Bayer's NAD Complaint. In short, Bayer is alleging that Farnam's advertising is false, and Farnam is seeking a declaration that it is not. While the Complaint may technically state that the counts Two and Three are brought pursuant to 40 C.F.R.§156.10(a)5(ii) and (iv) and 16 C.F.R. §255, Farnam seeks a Declaratory Judgment that its advertising is not false.

As noted above, a case or controversy exists when the facts alleged, under all the circumstances, show there is a substantial controversy between the parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. *See Maryland Casualty Co. v. Pacific Coal and Oil Co.* 312 U.S. 270, 273, 61 S. Ct. 510 (1941); *see also Medimmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 127, 127 S. Ct. 764, 772 (2007).

Here, Bayer has accused Farnam of false advertising. The same facts which give rise to Farnam's alleged violations of 40 C.F.R.§156.10(a)5(ii) and (iv) and 16 C.F.R. §255, give rise to Bayer's Lanham Act claim. There is a substantial controversy between the parties involving these allegations. A Declaratory Judgment is warranted because a declaration that Farnam is not in violation of 40 C.F.R.§156.10(a)5(ii) and (iv) and 16 C.F.R. §255 or otherwise engaging in false advertising under the Lanham Act or any other act, rule or regulation would "serve a useful purpose when clarifying and settling the legal relations in issue, and … will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceeding." *See Bilbrey By Bilbrey v. Brown*, 738 F.2d 1462, 1470 (9th Cir. 1984).

**C.    Bayer's Request for a Stay.**

Bayer argues, alternatively, that the Court should issue a stay to allow the NAD to complete its review of Farnam's advertising. As part of its inherent power to control the

disposition of the causes on its docket "with economy of time and effort for itself, for counsel, and for litigants," this Court has the power to stay litigation pending resolution of a related proceeding. *See Landis v. N. Am. Co.,* 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936). A stay will not be ordered, however, unless the moving party shows that it will provide some advantage in terms of efficiency or fairness. *See Clinton v. Jones,* 520 U.S. 681, 708, 117 S.Ct. 1636, (1997) (holding, "the proponent of a stay bears the burden of establishing its need.").

The NAD is a private, voluntary, non-binding forum in which only its rules of procedure apply and its case determinations—not federal or state case law—are precedent. *See e.g.,* NAD Complaint case citations; *see also*, NAD case rulings attached to Hughes-Coons Decl, Exs. H-O. Because the due process protections afforded litigants in court proceedings and case precedent would not be available to Farnam, Farnam has chosen not to participate in the NAD proceeding. As a consequence, no efficiency or fairness will result from a stay of this proceeding. Furthermore, at least one District Court in the Ninth Circuit has made it clear that a court should not stay a case to allow the parties to go through the NAD process. The court in *Expedia, Inc. v. Priceline.com Inc.*, C09-0712RSL, 2009 WL 4110851 (W.D. Wash. Nov. 23, 2009) stated:

> Defendant argues that (1) a final NAD decision may simplify the case and/or promote settlement, and (2) a remand to NAD will help prevent the type of procedural gamesmanship Expedia employed here. Neither of these arguments is convincing. The NAD stated its analysis and proposed findings when it administratively closed its investigation. The Court and the parties therefore have the benefit of NAD's expert view on Priceline's advertising without having to delay this litigation even for a few weeks. ***In addition, defendant has not shown that a final NAD decision would be admissible under the Federal Rules of Evidence to support its defense of plaintiffs' claims***. *See Rexall Sundown, Inc. v. Perrigo Co.,* 2009 WL 2891021 (E.D.N.Y., Sept.10, 2009). ***Nor is it this Court's role to safeguard the relevance and effectiveness of an industry's self-regulatory body. If NAD's rules allow a challenger to "opt out" of the NAD process***

11

*by filing a duplicative court action, the obvious remedy would be to amend the rules if the industry agrees that this is not an optimal use of the parties' or the organization's time and resources.*  This Court will not provide a "fix" or attempt to send any sort of "message" to other participants in the NAD process based on the limited information before it.

*Expedia, Inc. v. Priceline.com Inc.,* C09-0712RSL, 2009 WL 4110851 (W.D. Wash. Nov. 23, 2009), *emphasis added, footnote omitted*.

Bayer further relies on *Russian Standard Vodka USA, Inc. v. Allied Domecq Spirits and Wine USA, Inc.,* 23 F. Supp. 2nd 367 (S.D.N.Y. 2007) for the idea that a Stay should issue.  However, there is a significant difference between the *Russian Standard Vodka* case and the case at hand.  In *Russian Standard,* both parties had begun the NAD process and were in the final stages of the NAD investigation, when plaintiffs initiated the lawsuit in federal court.  *Id.* at 379.  The court found a stay was appropriate because the plaintiffs, the parties filing the action with the court, had themselves "…already invested considerable time and energy into the investigation at the NAD, and it would be inefficient to allow them to obviate that proceeding at the last minute initiating this action."  *Id.* at 384.  The considerable difference between the facts in *Russian Standard* and the facts before this Court are that in *Russian Standard* both the parties and the NAD "would have wasted unnecessary energy, time and money into a resolution of the issue at NAD" if the court did not issue a stay.  *Id.* at 385.  Here, Farnam has not participated in the NAD proceedings.  Instead, it chose to have the controversy resolved by a court of law where all of its defenses and the protections afforded by the due process and the Federal Rules of Civil Procedure apply.  Thus, Bayer's request for stay should be denied.

### D.     **Farnam's Motion to Amend.**

If the Court finds that Farnam has failed to adequately state a claim, Farnam requests leave to file a First Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2).  As the Court is well aware, the standard for leave to amend is

liberal.  The Federal Rules of Civil Procedure provide that leave to amend "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  The Ninth Circuit has noted that "a court must be guided by the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities."  *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981).  As a result, Rule 15(a) is applied with "extreme liberality."  *Id.*

Farnam maintains that it has properly stated a claim for relief under the Rules.  However, if the Court finds that the Complaint fails to state a claim or that counts Two and Three lack subject matter jurisdiction, Farnam respectfully requests that it be granted leave to file a First Amended Complaint.

## IV.  CONCLUSION

Bayer attempt to force its false advertising claims to be heard by the NAD is nothing more than a thinly veiled effort to deny Farnam the opportunity to avail itself of its available legal and equitable defenses and the protections afforded by of this Court.  Bayer's actions and proposed actions make it abundantly clear—an actual, justiciable case or controversy exists between the parties.  Accordingly, Farnam's Complaint for Declaratory Judgment adequately states a claim for relief.  Bayer's Motion to Dismiss for Lack of Subject Matter Jurisdiction should be denied.  Similarly, Bayer's request for stay should be denied.  No efficiency and, in particular, no fairness will result from a stay of this action and by forcing Farnam to "voluntarily" participate in the NAD process.

Alternatively, if the Court finds that Farnam did not adequately state a claim as to the various counts of its Complaint, Farnam requests leave of court to file a First Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2) (stating "leave to Amend shall be freely granted").

RESPECTFULLY SUBMITTED this 14th day of February, 2011.

          GALLAGHER & KENNEDY, P.A.


          By */s/ Robert J. Itri*
            Robert J. Itri
            Janey Henze
            2575 East Camelback Road
            Phoenix, Arizona 85016-9225
            Attorneys for Plaintiff Farnam
            Companies, Inc., d/b/a Central Life
            Sciences

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 14th day of February, 2011, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants.

Nicole M. Goodwin, Esq.
Quarles & Brady, LLP
Renaissance One
Two North Central Avenue
Phoenix, Arizona   85004-2391

David H. Bernstein, Esq.
Camille Calman, Esq.
Debevoise & Plimpton, LLP
919 Third Avenue
New York, New York   10022


/s/ Jeanette Burkey


2663166