```
Quarles & Brady LLP
Firm State Bar No. 00443100
Renaissance One
Two North Central Avenue
Phoenix, Arizona 85004-2391
TELEPHONE 602.229.5200
```

Nicole M. Goodwin (024593)
Nicole.goodwin@quarles.com

David H. Bernstein (dhbernstein@debevoise.com)
Camille Calman (ccalman@debevoise.com)
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
(212) 909-6696
*Admitted Pro Hac Vice*

*Attorneys for Defendant Animal Health Division of Bayer HealthCare LLC*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Farnam Companies, Inc. d/b/a Central Life Sciences,<br><br>                       Plaintiff.<br><br>vs.<br><br>Animal Health Division of Bayer HealthCare LLC,<br><br>                       Defendant. | NO. CV2010-02583-HRH<br><br>**REPLY IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS OR, ALTERNATIVELY, TO STAY**<br><br>**-AND-**<br><br>**RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO AMEND THE COMPLAINT** |

Defendant Bayer respectfully submits this reply memorandum in further support of its motion, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the complaint of plaintiff Farnam for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted, or, alternatively, for a stay to permit a parallel proceeding at the National Advertising Division of the

Better Business Bureau ("NAD") to be completed. Bayer also submits this memorandum in opposition to plaintiff's motion to amend the complaint.

I.   **INTRODUCTION**

Implicitly conceding that its complaint is dismissible, Farnam attempts to defend against Bayer's motion to dismiss by offering to amend its complaint. Those amendments, though, serve only to highlight the deficiencies in Farnam's initial complaint and to establish that those deficiencies cannot be cured.

For example, in its proposed amended complaint, Farnam deletes its initial counts two and three – its claims for a declaratory judgment that its advertisements are truthful under regulations promulgated under FIFRA and the FTC Act. Farnam's voluntary withdrawal of those claims is an implicit acknowledgment that there can be no dispute between Bayer and Farnam as to Farnam's compliance with FIFRA and FTC regulations because those regulations do not create any private right of action that Bayer could pursue, and thus there is no case or controversy related to these regulations. Having thus agreed to drop those claims, Farnam nevertheless tries to slip them back into the amended complaint, in count one, by seeking a declaration that its advertising does not violate 40 C.F.R. § 156.10(a)(5)(ii) & (iv), and 16 C.F.R. § 255 *et seq*. Whether those regulations are referenced in their own counts or in count one, and whether they are referenced by name or by C.F.R. citation, the fact remains that those regulations do not create any private right of action, that Bayer is powerless to sue Farnam for Lanham Act violations based on Farnam's lack of compliance with FIFRA and FTC regulations. Accordingly, there is no case or controversy relating to those regulations that vests this court with jurisdiction.

Similarly without merit is Farnam's argument that the Court has declaratory judgment jurisdiction because Bayer might sue Farnam in the future, notwithstanding Ms.

Hughes-Coons's representation to the Court to the contrary. The defense that Ms. Hughes-Coons cannot be trusted to bind Bayer, and that her statement that Bayer "has no intention of suing Farnam over the Bio Spot advertising at issue in this case" was not sufficiently definitive or clear, says far more about the merits of Farnam's position than it does about any ambiguity in Bayer's representation.

What is clear from Farnam's submission is that it fears a fair review of its advertising by the nation's premier self-regulatory forum for advertising review: the NAD. The suggestion that the NAD does not provide due process or a fair, equitable hearing is scurrilous and unfounded. To the contrary, as Farnam concedes, NAD has the "ear" of the FTC, and it has earned that "ear" by virtue of its fair, unbiased, expert decisions in thousands of cases over decades.

In any event, whether Farnam decides to participate in the NAD review process or not (since that process is voluntary, and NAD has no enforcement power to force a party to participate or to abide by its recommendations), Farnam has no right to drag Bayer into Court to defend a declaratory judgment litigation over claims that Bayer has stated it has no intention of filing, solely so that Farnam can obtain an advisory opinion on whether its advertising is truthful and substantiated. *Shell Oil Co. v. Amoco Corp.*, 970 F.2d 885, 889 (Fed. Cir. 1992) ("The Declaratory Judgment Act was intended to protect threatened parties, not to drag a non-threatening [party] into court."). Bayer sought review only at the NAD,[1] has already represented to the Court that it had no intention of suing Farnam over these claims, and, to ensure that Farnam fully understands Bayer's representations, provides another declaration in which it unambiguously promises that it will not sue Farnam, ever, in any court, over the advertisements cited in Farnam's complaint.

---

[1] As an alternative to dismissal of all of Farnam's claims, Bayer seeks a stay to permit the conclusion of a voluntary, non-binding NAD proceeding between the parties. Farnam has failed to rebut Bayer's showing that the factors set forth in *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324-25 (9th Cir. 1995), favor such a stay.

Because those facts make it plain that there is no case or controversy between Bayer and Farnam, there is no declaratory judgment jurisdiction and the complaint should be dismissed without any right to replead.

## II. LEGAL ARGUMENT

### A. Farnam's Request for Declaratory Judgment Under 40 C.F.R. § 156.10(a)(5)(ii) and (iv) and 16 C.F.R. § 255 *et seq.* Should Be Dismissed Because, as Farnam Now Concedes, There Is No Private Right of Action.

Farnam admits that there is no private right of action allowing Bayer to enforce the regulations promulgated under FIFRA and the FTC Act, 40 C.F.R. § 156.10(a)(5)(ii) and (iv) or 16 C.F.R. § 255 *et seq.* Plaintiff's Opposition Brief ("Opp. Br.") at 9-10. Absent a private right of action, there is no circumstance in which Farnam and Bayer could be adverse parties in a lawsuit related to violations of those regulations. Any action against Farnam for violation of these regulations could be brought only by the Environmental Protection Agency or the Federal Trade Commission, respectively. Therefore, there is no case or controversy between Bayer and Farnam over these claims. Moreover, Farnam's claim must fail because it has not joined the EPA and the FTC in this action, parties who would be necessary and indispensable to any declaratory judgment as to whether Farnam has violated those regulations. Fed. R. Civ. P. 19(a)(1) (requiring joinder of parties where, in their absence, court cannot accord complete relief among existing parties); *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 568-69 (1992) (resolution of declaratory judgment action would not remedy plaintiffs' alleged injury because federal court's ruling would not be binding on non-party federal agencies).

Without citation to any case law or statute, Farnam nevertheless argues that this Court can declare whether Farnam is complying with those regulations as part of the Court's jurisdiction over Lanham Act claims. Opp. Br. at 9-10. That is pure sophistry. There is no private right of action to enforce the FIFRA and FTC regulations directly, and

-4-

there similarly is no private right of action to enforce them indirectly though a Lanham Act claim. *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1113 (2d Cir. 1997) (Lanham Act cannot be used as a vehicle to privately endorse violations of statute that lacks private right of action); *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1139 (4th Cir. 1993) (same).

What Farnam is looking for is an advisory opinion on whether its advertising complies with these regulations. The law, however, does not allow that. Farnam is not entitled to seek an advisory opinion from this Court so that it can defend against regulatory challenges that have not been brought or even threatened by those regulators. Farnam should not be permitted to force Bayer to defend against a declaratory judgment proceeding on claims that Bayer is not entitled to pursue. *See Sandoz Pharms. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 231 (3d Cir. 1990) (rejecting "the theory that it is appropriate for a court in a Lanham Act case to determine preemptively how a federal administrative agency will interpret and enforce its own regulations").

    B.    **Plaintiff's Lanham Act Claim Should Be Dismissed Because Bayer Has Demonstrated That There Is <u>No Case or Controversy Under the Lanham Act.</u>**

Farnam argues that Bayer made an "unwarranted" interpretation when it read Farnam's complaint as asserting that Bayer lacks standing. Warranted or not, that was literally what Farnam said: "Bayer has no standing to sue Farnam, under the Lanham Act because the claims made in Exhibits D-F are . . . not directed at Bayer's products." Complaint, ¶ 45. Farnam now explains that it was not referring to "'standing' as defined in Article III cases," and that it meant to convey "that Farnam's advertising claims are not false and, therefore, Bayer has no claim under the Lanham Act." Opp. Br. at 6-7. That is a non sequitur. The truth or falsity of advertising claims is the ultimate matter to be decided in a Lanham Act false advertising suit; it has no bearing on whether a party has standing to sue in the first place. Farnam's assertion that, when it said "Bayer has no

standing to sue Farnam," it meant "Farnam's advertising claims are not false," strains credulity.

Whether Farnam itself even believes these arguments is aptly demonstrated by the revision it proposes in the amended complaint, where it deletes the statement that Bayer lacks standing. Proposed Amended Complaint, ¶ 45; *but see id.* at Prayer for Relief ¶ A (which still seeks a declaration that Bayer has no standing to sue). In any event, regardless of whether Farnam now pleads that Bayer has or lacks standing,[2] there is another, more fundamental reason why the case must be dismissed: Bayer has definitively stated that it will not sue Farnam over these claims, which divests this Court of any declaratory judgment jurisdiction over these claims.

The essence of a declaratory judgment suit is a party's apprehension that it will be sued, which apprehension has to be created by some threatening actions of the other party. Once that apprehension develops, it gives rise to a case or controversy that can be decided in court. No such case or controversy exists here because Bayer has stated (and does so again in the accompanying supplemental declaration of Ms. Hughes-Coons) that it will not sue Farnam over the advertisements at issue in the complaint, including with respect to any such ads that Farnam published in the past, is disseminating right now, or publishes, disseminates, or broadcasts in the future. Hughes-Coons Declaration ¶ 14; Supplemental Hughes-Coons Declaration ¶ 2.[3] Rather, once the NAD rules, Bayer will

---

[2]   Farnam misinterprets *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007), which does not stand for the broad proposition that an actual controversy exists wherever government action is possible. Rather, the *MedImmune* Court addressed a narrower question: whether a controversy is ripe for declaratory judgment even when the plaintiff declines to expose itself to potential government action (for instance, by refusing to pay patent royalties). 549 U.S. at 128-29. Here, Farnam is not claiming that there is a controversy that would be ripe but for its refusal to expose itself to government action; rather, it is claiming that, if this Court dismisses its complaint, the NAD might refer Farnam's advertising to the FTC. That possibility has nothing to do with the ripeness question that the Supreme Court addressed in *MedImmune*.

[3]   Farnam's suggestion that Bayer might allow its in-house counsel, Ms. Hughes-Coons, to publicly file statements on Bayer's behalf in federal court, under penalty of perjury, that Bayer

accept NAD's decision, whatever it might be. *Id.* Even if Farnam refuses to participate in the process or to abide by the NAD's recommendations, Bayer will not pursue any court claim against Farnam over these ads. Supplemental Hughes-Coons Declaration ¶ 2.

Nevertheless, Farnam cites *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1383 (Fed. Cir. 2007) for the proposition that a statement of intent not to sue is insufficient to moot an actual controversy between parties. But the *SanDisk* court based its decision on its judgment that ST's other actions – presenting SanDisk with a "thorough infringement analysis presented by seasoned litigation experts;" giving a presentation that identified SanDisk's alleged infringement on an element-by-element basis; and presenting SanDisk with a 300-page packet of materials showing a detailed infringement analysis – suggested that ST had "engaged in a course of conduct that shows a preparedness and willingness to enforce its patent rights," contradicting its statement that it had "absolutely no plan whatsoever to sue." *Id.* at 1376, 1382-83. In a later case, the Federal Circuit explained further that ST "only stated that it did not *intend* to sue SanDisk; it did not say it *would not* sue SanDisk in the future for its alleged infringement." *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1347 (Fed. Cir. 2007).

The facts here are very different. Bayer's actions match its words. It has hired no experts and prepared no detailed analysis. Moreover, although Ms. Hughes-Coons did state in her initial declaration that Bayer had no "intention" of suing Farnam, she also said that "Bayer's only intention was to seek a resolution of this advertising dispute at the NAD," and that, "[h]owever NAD rules, Bayer will accept NAD's decision." Hughes-Coons Declaration ¶ 14. To the extent that was not sufficiently clear, Ms. Hughes-Coons

---

would then disavow as non-binding is offensive. It is black letter law that "each party is deemed bound by the acts of [its] lawyer-agent." *Link v. Wabash*, 370 U.S. 626, 634 (1962); *see also Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1057, 1059 (Fed. Cir. 1995) (Super Sack bound by its counsel's statement that the company would not sue Chase in future), *abrogated on other grounds by MedImmune*, 549 U.S. at 132 n.11.

has now said exactly what the *SanDisk* and *Benitec* decisions required; she has stated unequivocally that Bayer "will not sue Farnam in any court for any past, present or future use by Farnam of the specific advertisements discussed in Farnam's complaint in this case." Supplemental Hughes-Coons Declaration ¶ 2. With that declaration, any possible case or controversy has been mooted, and the complaint must be dismissed. *Tequila Cuervo La Rojena v. Jim Beam Brands Co.*, No. 10 Civ. 0203 (SHS), 2011 WL 407938, at *2 (S.D.N.Y. Feb. 8, 2011) (stipulation signed by party's counsel that it would not sue Cuervo for past or current and continued use of its crow trademark was "sufficient to moot this action and require dismissal for lack of subject matter jurisdiction"); *Benitec Australia*, 495 F.3d at 1347-48 (no declaratory judgment case or controversy where defendant covenanted not to sue); *Janssen Pharmaceutica, N.V. v. Apotex, Inc.*, 540 F.3d 1353, 1363 (Fed. Cir. 2008) (same); *Dodge-Regupol, Inc. v. RB Rubber Prods., Inc.*, 585 F. Supp. 2d 645, 649-55 (M.D. Pa. 2008) (same); *Crossbow Tech., Inc. v. YH Tech.*, 531 F. Supp. 2d 1117, 1122-23 (N.D. Cal. 2007) (same).

Farnam's reliance on *Russian Standard Vodka (USA), Inc. v. Allied Domecq Spirits & Wine USA Inc.*, 523 F. Supp. 2d 376 (S.D.N.Y. 2007) is similarly misplaced. In that case, defendant Pernod Ricard submitted an affidavit stating that it would not sue plaintiffs for any *past* statements regarding defendant's products, but reserved the right to sue over future statements. *Id.* at 380. The court ruled that this affidavit mooted any actual controversy between the parties as to past statements, *id.* at 382, but did not moot any case or controversy as to future statements because Pernod Ricard's affidavit explicitly limited itself to past statements. *Id.* at 383. Here, in contrast, Bayer has expressly promised that it will not sue Farnam over any use of the advertisements at issue in this case, past, present, or future. Supplemental Hughes-Coons Declaration ¶ 2.[4]

---

[4] Farnam argues that Bayer's submission of the Hughes-Coons Declaration and exhibits converts Bayer's motion to dismiss to a motion for summary judgment. Opp. Br. at 7 n.2. As the

### C. Farnam Has Failed to Rebut Bayer's Argument That the Ninth Circuit's Five-Factor Test Favors a Stay.

In the alternative, should the Court decline to dismiss Farnam's complaint at this time, Bayer continues to believe it would be appropriate to stay this matter for a short time to allow NAD to complete its work (or for the Court to request that NAD complete its work on a parallel track). Such a stay is mandated by the five-factor test set forth in *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324-25 (9th Cir. 1995).

In defending against the stay request, Farnam discusses only one of these factors – its own interests, Opp. Br. at 10-12 – in essence conceding that the other four factors (the burden on Bayer, the convenience of the Court, and the interests of non-parties and the public) favor Bayer. In fact, even the first factor does not favor Farnam; Farnam has not shown that it would suffer any concrete harm if the motion were granted. *See Russian Standard*, 523 F. Supp. 2d at 384. But, even if it had, Farnam cites no support for the proposition that a single factor, the plaintiff's interests, should be dispositive in deciding whether to grant a stay. To the contrary, the Court's obligation is to balance competing interests. *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).

Farnam argues that *Expedia, Inc. v. Priceline.com, Inc.*, No. C09-0712RSL, 2009 WL 4110851 (W.D. Wash. Nov. 23, 2009) supports its argument against a stay. But in that case, the NAD had already revealed its analysis and proposed findings, and thus there was nothing to be gained by any further delay in the advancement of the litigation. *Id.* at *1. Moreover, a final decision at the NAD would have resolved nothing because Expedia, the party that filed the NAD action, was also the party that filed suit in court,

---

Ninth Circuit has explained, the Court has discretion to look beyond the pleadings when considering subject matter jurisdiction. *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136. 1141 n.5 (9th Cir. 2003) ("[I]n ruling on a 12(b)(1) jurisdictional challenge, a court may look beyond the complaint and consider extrinsic evidence."); *see also U.S. v. LSL Biotechnologies*, 379 F.3d 672, 700 n.13 (9th Cir. 2004) ("When a district court rules on a Rule 12(b)(1) motion, unlike a 12(b)(6) motion, it may consider affidavits or other extra-pleading evidence.").

thus signaling its intention to proceed with a duplicative court action in an effort to receive a more favorable ruling. In contrast, here, Bayer has explicitly stated that it will abide by any NAD decision and will not seek to resolve the matter in court, regardless of how the NAD rules. Supplemental Hughes-Coons Declaration ¶ 2.

Farnam also argues that *Russian Standard* is distinguishable because both parties in that case had expended resources on the NAD proceedings. But that fact was not central to the court's analysis; the *Russian Standard* court relied primarily on the "two most significant prongs" of the five-factor test in that case: convenience of the courts and the public interest. 523 F. Supp. 2d at 384-85.

Bayer agrees with Farnam that this Court would be well qualified to decide this matter. Opp. Br. at 9. The court's skill, however, is not a factor in the *Keating* test. Ultimately, a court decides whether to grant a stay pursuant to its power to manage its docket to promote economy of time and effort for itself, for counsel, and for all litigants. *CMAX Inc.*, 300 F.2d at 268. Here, a stay could clear from this Court's docket a case that can be resolved more cheaply, quickly, and efficiently in another well-qualified forum. And, it could remove from the judicial system a case that Bayer has said it had no intention of filing and will not file in the future.

D.   **Farnam's Motion to Amend Its Complaint Should Be Denied.**

Farnam's motion to amend its complaint should be denied because the proposed amendments – and indeed any amendments – would not cure the fundamental deficiencies of Farnam's initial complaint. As discussed in Section B, even with the proposed amendments, Farnam fails to properly allege that Bayer has standing to sue Farnam under the Lanham Act, especially given Bayer's unequivocal assurances that it had no intention of suing, and will not sue, Farnam over the Bio Spot advertising discussed in the complaint. Nor would amendment cure the deficiencies of Farnam's

claims under FIFRA and the FTC Act. As noted above, Farnam proposes dropping these claims but then re-inserting them as part of its Lanham Act claim. Proposed Amended Complaint ¶ 45. It continues to seek a ruling that its ads are truthful under these statutes. *Id.* ¶ 45 and Prayer for Relief ¶¶ C, D. However, as discussed in Section A, no authority grants to this Court jurisdiction under the Lanham Act over potential claims between Farnam and non-party regulatory agencies. For these reasons, amending the complaint would be ineffectual and Farnam's motion should be dismissed.

### III. CONCLUSION

Bayer respectfully requests that this Court dismiss Farnam's complaint under Rules 12(b)(1) and 12(b)(6) of the Rules of Civil Procedure and deny its motion to amend the complaint. In the alternative, Bayer requests a stay of this case pending resolution of NAD's review of Farnam's advertising.

QUARLES & BRADY LLP
Renaissance One
Two North Central Avenue
Phoenix, AZ 85004-2391


By /s/ Nicole M. Goodwin
    Nicole M. Goodwin

David H. Bernstein (dhbernstein@debevoise.com)
Camille Calman (ccalman@debevoise.com)
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
(212) 909-6696
*Admitted Pro Hac Vice*

*Attorneys for Defendant Animal Health Division of Bayer HealthCare, LLC*

23375457v2QB\139921.00002\12599874.1

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of February, 2011, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants.

Robert J. Itri<br>
Janey Henze<br>
Gallagher & Kennedy PA<br>
2575 E Camelback Rd, Ste 1100<br>
Phoenix, AZ 85016-9225<br>
602-530-8208<br>
Fax: 602-530-8500<br>
Email: rji@gknet.com<br>
Email: janey.henze@gknet.com

/s/   Maria Marotta

23375457v2QB\139921.00002\12599874.1