Robert J. Itri rji@gknet.com (010938)
Janey Henze janey.henze@gknet.com (022496)
GALLAGHER & KENNEDY, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
(602) 530-8000
Fax (602) 530-8500

Attorneys for Plaintiff Farnam Companies, Inc.,
d/b/a Central Life Sciences

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Farnam Companies, Inc. d/b/a Central Life Sciences, an Arizona corporation,<br><br>Plaintiff,<br><br>v.<br><br>Animal Health Division of Bayer HealthCare, LLC, a Delaware limited liability company,<br><br>Defendant. | No. 2:10-CV-02583-HRH<br><br>**FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT**<br><br>(Jury Trial Requested) |

Plaintiff Farnam Companies, Inc. d/b/a Central Life Sciences ("Farnam") hereby alleges for its Complaint for Declaratory Judgment as follows:

**<u>NATURE OF THE ACTION</u>**

1. This is an action seeking a declaratory judgment that certain advertising claims made by Farnam are truthful, lawful and adequately substantiated under the Lanham Act, 15 U.S.C. § 1125(a), and that Bayer's claims are barred by the doctrine of laches, estoppel and/or acquiescence.

**PARTIES, JURISDICTION AND VENUE**

2. Farnam is an Arizona corporation with its principal place of business in Phoenix, Arizona.

3. Defendant Animal Health Division of Bayer HealthCare, LLC ("Bayer") is a Delaware limited liability company with its principal place of business in Shawnee Mission, Kansas.

4. Bayer sells animal health products throughout Arizona, both through veterinary clinics and over-the-counter at retail stores such as PetSmart.

5. As a result of these sales, Bayer has been engaged in substantial, continuous and systematic contacts within the District of Arizona such that the exercise of personal jurisdiction over Bayer in this district comports with fair play and substantial justice.

6. Bayer has raised allegations that Farnam is disseminating false and misleading claims that Farnam's Bio Spot® topical flea and tick control products for cats and dogs ("Bio Spot") is at parity with, or superior to, competing products manufactured by Bayer, namely, Bayer's K9 Advantix® and Advantage®.

7. Bayer raised these allegations in demand letters sent to Farnam in Arizona, as well as in a formal complaint Bayer submitted to the National Advertising Division of the Council of the Better Business Bureaus, Inc. ("NAD").

8. Having raised these allegations about products Farnam and Bayer both sell in Arizona, and having caused harm to Farnam in Arizona as a result, Bayer has engaged in purposeful contact within the District of Arizona involving events giving rise to this

2

1  action such that exercise of personal jurisdiction over Bayer in this district comports with

2  fair play and substantial justice.

3       9.     This action seeks a declaratory judgment, pursuant to the Federal

4  Declaratory Judgment Act, 28 U.S.C. § 2201, consistent with paragraph 1 above.

5       10.     This court has subject matter jurisdiction over the claims asserted herein

6  under 28 U.S.C. §§ 1331 and 1332.

7       11.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b).

8  **<u>GENERAL ALLEGATIONS</u>**

9       12.     Farnam sells its Bio Spot products exclusively over-the-counter and has

10  always done so.

11       13.     Until recently, Bayer sold its K9 Advantix® and Advantage® products

12  exclusively through veterinarians.

13       14.     In or about early 2010, Bayer began selling the K9 Advantix® and

14  Advantage® over-the-counter as well as through veterinarians.  As a result, Bayer began

15  to compete directly with Farnam.

16       15.     However, Bayer's products cost substantially more than Farnam's Bio Spot

17  products.

18       16.     Moreover, Bayer's veterinary customers were upset by Bayer's decision to

19  sell the products over-the-counter, resulting in lost business to Bayer.

20       17.     Thus, it was not a coincidence when, shortly after Bayer's decision to sell

21  competing products over-the-counter appeared to have been a bad one, Bayer began to

22  allege that Farnam's advertising for its Bio Spot product constituted false advertising.

3

1  Bayer's false advertising allegations are nothing more than an attempt to stifle legitimate
2  competition from Farnam, now that Bayer has entered the identical channels through
3  which Farnam sells its products.
4      18.    Specifically, by letter dated August 20, 2010 to Farnam, Bayer expressed
5  concerns about certain claims made in advertising for Farnam's Bio Spot products.
6  Bayer asserted that the advertisements are misleading, convey false and unsubstantiated
7  claims and are in violation of federal law.  *See* <u>Exhibit A.</u>
8      19.    Bayer claimed that Farnam's advertising pieces made false and unlawful
9  comparisons to Bayer's own flea and tick products.  *Id.*
10     20.    Bayer alleged that Farnam's advertising statements related to its Bio Spot
11 products were false and misleading and violated, among other things, the Lanham Act.
12 *Id.*
13     21.    Finally, Bayer demanded that Farnam provide substantiation for these
14 claims or immediately withdraw the advertising.  *Id.*
15     22.    Farnam responded to Bayer by letter dated September 22, 2010.  *See*
16 <u>Exhibit B.</u>
17     23.    In that letter, Farnam notified Bayer that the product comparisons were
18 based upon the products' respective EPA-approved label claims, and thus, were true.  *Id.*
19     24.    Farnam also noted that use of the word "best" in its advertising is mere
20 puffery or opinion, which is not actionable.  *Id.*
21     25.    Accordingly, Farnam declined to withdraw its advertising.  *Id.*
22

4

26. Thereafter, on November 4, 2010, Bayer submitted a formal complaint against Farnam's advertising for Bio Spot to the NAD (hereinafter, the "NAD Complaint"). *See* Exhibit C.

27. NAD offers a voluntary advertising review proceeding and is administered by the Council of Better Business Bureaus, Inc.

28. In the NAD Complaint, Bayer alleged again that, in nationally-distributed print advertisement and companion claims published on its web site, Farnam is disseminating false and misleading claims that Bio Spot is at parity with, or superior to, competing products sold by veterinarians – products such as Bayer's K9 Advantix® ("K9 Advantix"), which controls fleas, ticks, mosquitoes, lice and biting flies on dogs, and Advantage® ("Advantage"), which controls fleas on cats and dogs, and lice on dogs.

29. Bayer specifically alleged that the following claims found in Farnam's advertising at Exhibits D-F are false and misleading:

 a. Bio Spot is "as effective as" competing products available from veterinarians, and/or Bio Spot is "as effective as popular vet brands at ½ the price," and similar statements;

 b. Bio Spot is "the best" or provides "the best flea & tick control," or is "the best flea & tick control available," and similar statements;

 c. Bio Sport is "the choice of professionals" and similar statements;

 d. Bio Spot keeps pets "free" of fleas and ticks and similar statements.

30. Bayer further alleged that the video on Farnam's web site featuring a dog trainer named Margaret Jenkins (the "Jenkins Video"), Exhibit F, violates federal law.

5

31. Again, Bayer alleged that Ms. Jenkins's stated belief that Bio Spot is "as effective" as competitive products is false.

32. Bayer requested in its NAD Complaint that NAD recommend that Farnam cease making all of the claims above and not make any comparative claims against competing products in the future absent "appropriate" substantiation.

33. By letter from NAD, Farnam was notified that, pursuant to NAD *Procedures*, it must respond to Bayer's allegations on or before December 1, 2010.

34. For the reasons set forth in its September 22, 2010 letter to Bayer, among others, Farnam disagrees that any of its advertising for Bio Spot is false or misleading and denies that it violates any relevant or applicable law, including, without limitation, the Lanham Act. Farnam further contends that Bayer's allegations are barred by the doctrine of laches, waiver and/or acquiescence. Accordingly, there is an actual and justiciable controversy between Farnam and Bayer.

35. Farnam believes that the claims raised by Bayer should be resolved in a proceeding administered by a court of law under a set of procedural rules that will allow it sufficient time to respond to the kinds of detailed allegations that make up false advertising claims like those raised by Bayer.

36. Farnam further believes that the false advertising claims raised by Bayer should be adjudicated by a jury of its peers and result in a binding judgment on the parties.

37. NAD recognizes that its review process is voluntary, and that any party (for the reasons above) may prefer to resolve a dispute in a court of law. Thus, in Section

2.2(B) of its *Procedures*, NAD provides that any complaint which is "the subject of pending litigation" shall not be appropriate for formal investigation by NAD, and that NAD shall administratively close the case file if, during the course of a proceeding, NAD concludes the advertising claims complained of are the subject of pending litigation.

38.   Accordingly, Farnam is exercising its legal right to have this dispute administered by a court of law and its right to a trial by jury by filing this declaratory judgment action.

### COUNT ONE
### (Declaratory Judgment under the Lanham Act)

39.   Farnam repeats and realleges each of the allegations above.

40.   Bayer claims that Farnam's comparative advertising claims, set forth in paragraphs 29 and 31 above and attached again as <u>Exhibits D-F</u> hereto, and supporting material, including the Jenkins Video are unsubstantiated, false, misleading and, among other things, constitute unfair competition under the Lanham Act, 15 U.S.C. § 1125(a).

41.   Farnam contends that its advertising claims are not directed to Bayer's products.

42.   Farnam also contends that its advertising claims are truthful and substantiated by the EPA-approved label claims for Farnam's Bio Spot products and Bayer's Advantix and Advantage products.

43.   Farnam further contends that its advertising claims constitute unactionable puffery or statements of opinion.

44.     Accordingly, Farnam seeks a declaration that Farnam's advertising claims are not actionable under the Lanham Act because the claims made in Exhibits D-F are 1) not directed at Bayer's products; 2) are truthful, adequately substantiated and lawful under the Lanham Act; and 3) constitute mere puffery or statements of opinion, and thus, are not actionable under the Lanham Act.

## COUNT TWO
**(Declaratory Judgment of Laches, Estoppel or Acquiescence)**

45.     Farnam repeats and realleges each of the allegations above.

46.     As early as 1998, Farnam compared its Bio Spot products to Bayer's Advantage product, among others, and claimed that no flea and tick product worked more effectively than Bio Spot.  In other words, for over ten years, Farnam has claimed that its Bio Spot product is at least as effective as, if not more effective than, competing products, including Bayer's products.

47.     As early as 2006, Farnam compared its Bio Spot products to Bayer's Advantage product, among others, and claimed that its Bio Spot product delivered effective flea and tick control without a visit to the vet.  In other words, for over four years, Farnam has claimed that its Bio Spot products are as effective as vet brands.

48.     The Jenkins Video about which Bayer complains, found at Exhibit F, has aired, and also has been published on Farnam's web site, since as early as 2006.

49.     Bayer unreasonably delayed raising its false advertising claims, waiting over four (4) years to raise any allegations that these advertisements were unlawful.

50.     Farnam has already paid for the production of promotional materials that include the comparison charts and claims about which Bayer complains.

51.     If Farnam were required to pull truthful advertising that it has been running for years, the harm to Farnam's reputation and goodwill could be immeasurable.

52.     Accordingly, Farnam requests a declaration that Bayer's claims are barred by the doctrine of laches, estoppel and/or acquiescence.

## JURY TRIAL DEMANDED

53.     Farnam requests a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Farnam prays for judgment against Bayer as follows:

(A)     For a declaration that Farnam's advertising claims are not actionable because the advertising claims in <u>Exhibits D-F</u> are not directed at Bayer's products;

(B)     For a declaration that Farnam's advertising claims set forth in <u>Exhibits D-F</u> are truthful, adequately substantiated and lawful under the Lanham Act, 15 U.S.C. § 1125(a);

(E)     For a declaration that Bayer's claims are barred by the doctrine of laches, estoppel and/or acquiescence;

(F)     To the extent permissible under applicable law, an award to Farnam of the costs of suit incurred herein, including reasonable attorneys' fees; and

(G)     Any such other relief the Court deems just and proper.

RESPECTFULLY SUBMITTED this 2nd day of June, 2011.

GALLAGHER & KENNEDY, P.A.

By: */s/ Robert J. Itri*
　　Robert J. Itri
　　Janey Henze
　　2575 East Camelback Road
　　Phoenix, Arizona 85016-9225
　　　Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

　　I HEREBY CERTIFY that on the 2nd day of June, 2011, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants.

Nicole M. Goodwin, Esq.
Quarles & Brady, LLP
Renaissance One
Two North Central Avenue
Phoenix, Arizona   85004-2391

David H. Bernstein, Esq.
Camille Calman, Esq.
Debevoise & Plimpton, LLP
919 Third Avenue
New York, New York   10022

*/s/ Jeanette Burkey*